IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) ) |
| URS FREI, | )   S3 12 Cr. 02 (JSR) ) ) |
| Defendant. | ) ) |

**ORDER REGARDING DEFENDANT'S PRESENCE IN THE UNITED STATES FOR THE PURPOSE OF SERVING HIS SENTENCE OF IMPRISONMENT**

The Defendant, Urs Frei, is a citizen and resident of Switzerland who has never resided in the United States. He was indicted in this matter in 2012 while living in Switzerland and, after pleading guilty remotely (on consent), has traveled to the United States only one time since then, to attend sentencing on November 19, 2021. On that occasion, the Court sentenced Mr. Frei to a term of imprisonment of two months. Following the imposition of sentence, the Court permitted Mr. Frei—after posting bail—to return to his home in Switzerland on the condition that he would travel back to the United States to surrender to the Bureau of Prisons ("BOP") to begin serving his sentence on a date set by the Court. Initially, the Court ordered Mr. Frei to surrender on January 11, 2022. The Court subsequently adjourned the surrender date to February 8, 2022, with no further adjournments to be granted.

Mr. Frei will soon be traveling to the United States to begin serving his sentence. At the conclusion of his sentence, he has the means and will to depart from the United States immediately and return to his home in Switzerland. There is no indication that he would choose to travel to the United States were it not for the need to comply with the sentence of this Court, and, likewise, no

indication that he has any desire to stay in the United States following the conclusion of his sentence.

Aware of the foregoing, the United States Attorney's Office for the Southern District of New York ("USAO") and the Internal Revenue Service's Criminal Investigation division ("IRS-CI") have worked in good faith to obtain a commitment from United States Immigration and Customs Enforcement ("ICE") that Mr. Frei will be allowed to depart from the United States voluntarily at the conclusion of his sentence (with his departure monitored by IRS-CI, if appropriate), and that ICE will not initiate deportation proceedings against Mr. Frei or deport him. The USAO reports to the Court that it has been unable to obtain any such firm commitment from ICE. The most the USAO has been able to obtain is the informal opinion of the division of ICE responsible for authorizing Mr. Frei's entry into the United States—Homeland Security Investigations ("HSI")— that it considers it unlikely that ICE would choose to detain and deport Mr. Frei upon the conclusion of his sentence. Not only is that not a commitment, but it is cold comfort since HSI is not the division within ICE that would make the decision.

It would be grossly unfair for Mr. Frei—who is traveling to the United States for the sole purpose of voluntarily surrendering to serve the sentence of this Court—to be placed by ICE into deportation proceedings at the conclusion of his sentence. Such proceedings could result in lengthy detention beyond the term of imprisonment ordered by this Court, and the resulting deportation could carry collateral consequences such as a multi-year bar on Mr. Frei's possible reentry into the United States.

Further, even if none of that occurs, the BOP has reported to both the USAO and Mr. Frei's counsel that the mere possibility that Mr. Frei could be deported will cause the BOP, under its designation procedures, to classify Mr. Frei as a "Deportable Alien" and apply a corresponding

Public Safety Factor ("PSF") when determining Mr. Frei's security classification. That PSF will, in and of itself, make Mr. Frei ineligible (even if he would otherwise be eligible) for designation to a minimum security facility like the two that the Court recommended in its judgment and commitment order. Although the BOP has stated that a PSF will not be applied if there has been a determination that deportation proceedings are unwarranted, the USAO has presented the BOP with HSI's informal prediction that deportation is unlikely and the BOP has, not surprisingly, found that to be less than a commitment.

Accordingly, because it is clear that it would be both unfair to Mr. Frei and a miscarriage of justice for ICE to initiate deportation proceedings against Mr. Frei following the completion of his Court-ordered sentence before he has had an opportunity to depart from the United States voluntarily, and given that ICE's refusal to make a formal commitment that it will not do so is unfairly disadvantaging Mr. Frei in connection with the service of the sentence imposed by the Court,

**IT IS HEREBY ORDERED** that Mr. Frei shall, absent extension by this Court, depart from the United States at his own expense within 48 hours of his release from the custody of the Bureau of Prisons; and

**IT IS FURTHER ORDERED** that, unless Mr. Frei fails to surrender to the Bureau of Prisons to begin his sentence or fails to depart from the United States as directed by the Court at the conclusion of his sentence, ICE shall not place a detainer on Mr. Frei prior to or during the period of his sentence, and, upon the conclusion of his sentence, shall not detain him, initiate deportation proceedings against him, or deport him. While the Court is confident that ICE will adhere to this Order, any failure on its part to do so will be treated as a contempt of court on the part of ICE and its relevant personnel, giving rise to immediate sanctions.

Finally, it is the desire of the Court that this Order serve as a sufficient commitment to the BOP that deportation proceedings against Mr. Frei are unwarranted and that he will not be deported upon the conclusion of his sentence, so that he remains eligible for a minimum security facility to serve his two-month sentence.

SO ORDERED:

_____
The Honorable Jed S. Rakoff
United States District Judge

Dated: January 31, 2022
New York, NY